May it please the Court, I'm Misha Igra. I'm a supervising Deputy Attorney General, and I represent the Secretary of the Department of Corrections and Rehabilitation. I'd like to reserve three minutes for rebuttal. Okay. Please proceed. Thank you, Your Honor. The sole issue certified for appeal here is expiration of the statute of limitations for Mr. Pouncil's claim arising under the Religious Land Use and Institutionalized Persons Act. Inmate Madero Pouncil is an inmate serving life without possibility of parole. Colloquialism is serving LWOP. Now, consistent with the state regulation, Pouncil's criminal sentence renders him ineligible for conjugal visitation. Mr. Pouncil challenged that regulation in 2002 when he filed an inmate grievance alleging that he had a duty under his religion to have sex with his wife. But he didn't file suit on that claim until April of 2009, nearly seven years later. So that was long after. The claim wasn't quite the same. He wasn't married to the same woman. Your Honor, his lawsuit indicates that he is challenging implementation of a regulation. This is a regulation that has remained unchanged since 1996. It was challenged in the California courts and implementation was upheld. Mr. Pouncil knew about the existence of this regulation with regard to his first wife, and he sat on his rights through the entire marriage. The statute of limitations for a claim under an act of Congress, such as the Religious Land Use and Institutionalized Persons Act, is four years. In 2002, he knew that this regulation would prevent him from having sex with any wife who he married while in prison. Well, you have, you know, I guess that might be a little oversimplification from the standpoint he may very well lose. But you have cases like National Passenger Corps Railroad v. Morgan and cases like Chorovsky v. Henderson that talk about discrete acts and divisible acts and things along those lines. And I think the analysis in those cases is problematic for your position, because he did file when he, the one, with the new wife, he filed another claim. And I'm having a hard time why Morgan wouldn't apply here as saying that's a discrete act. Yes, Your Honor. With regard to discrete acts, this Court in the Chorovsky v. Henderson case analyzed a similar situation, and also in Knox v. Davis. Knox is probably the most on point here. We've got an attorney who was denied visitation privileges with inmates in prison. And she argued that each time she was denied visitation, it was a new accrual. I thought that she acknowledged that her claim accrued upon receipt of the letter suspending her prison visitation rights. She specifically acknowledged that. Yes. But she said that each time she started a new statute of limitations, and therefore she should be permitted to go forward. She said that there was a continuing violation, and so she could group back in. Well, counsel, can I ask you this? In your reply brief, you said that Chorovsky is inapplicable because it's a continuing violation case. That's correct. Yet Knox is a continuing violation case, too, so you can't have it both ways, can you? Well, this Court actually analyzed Knox both for an accrual standpoint and for the continuing violation doctrine. But the point is that Mr. Pouncell is claiming that visitation with someone new, visitation with someone new, is a new claim for challenging a regulation that he has been subject to since 1996. Now, he knew in 2002 when he was advised that Section 3044 of Title 15, which is now 3177, prevented inmates serving life without possibility of parole from engaging in conjugal visits. That's family visitation with any member of your family. Now, he knew when he remarried that he was subject to this regulation. He knew when he remarried that he would be unable to have sex with anyone that he married. If we are to learn anything from the case cited by Appellee, the Petra Presbyterian case, he assumed the risk when he remarried that he would be unable to consummate that marriage while in prison. But isn't that contrary to the whole thing in Morgan and also contrary to Justice O'Connor's concurrent opinion in Morgan? And by the way, if they raised Morgan, you never addressed it in your reply brief. We didn't, Your Honor, and for that I apologize. But I believe that the accrual this Court has held that accrual occurs when you know of the injury or you know of the facts constituting the injury. Mr. Pouncell clearly knew in 2002 that he would be unable to participate in conjugal visits because of his sentence. That is what his claim accrued. But Justice Thomas in the Morgan case said at page 113, the existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar, and it goes on to say because it's a discreet act. So how do you get around that, Justice Thomas's language in Morgan? Because Mr. Pouncell's claim in his complaint is I am challenging implementation of a regulation. I am not challenging denial of a visitation. I am challenging the implementation of the regulation that bars conjugal visits for inmates serving life without possibility of parole. And implementation of that regulation was something he was aware of in 2002. Now, his claim is not that I've been denied family visitation with my wife. It is that implementation of that regulation is something that I've been denied. Why do you say that? Is there some language in his complaint that says I'm challenging implementation, not specific denial? Yes, Your Honor. In Excerpts of Record page 38, Mr. Pouncell states, I'm a Muslim under the RLUIPA Act. He clearly states that he is challenging, he is suing CDCR for implementing a regulation. All right. Do you want to reserve the balance of your time? Yes. Thank you, Your Honor.  Yes. Thank you, Your Honor. Good morning. Good morning. May it please the Court. My name is Tricia Murata, and I am pro bono counsel for Appellee Madero Pouncell. I would first like to thank the Court for the opportunity to present oral argument on Mr. Pouncell's behalf this morning. See if you thank us after argument. The district court here correctly determined that Mr. Pouncell's lawsuit was timely. And knowing that the Court is very familiar with the record and the briefs, I'd like to use my time. Ms. Murata, would you please address the last point that was made by Ms. Igra? Of course. Which is that your client is seeking a declaratory relief measure as to the regulation itself, rather than claiming that the specific visit has caused him a particular rise to injury. Does that make a difference? I think that the appellant's criticism of the complaint is not specifically referencing the specific application and the denial of the application for a visit with his current wife is not well taken for a couple of reasons. The first is that if you look at the appellant's excerpts of record at page 36, Mr. Pouncell specifically references all of the appeals that he made, the internal prison appeals that he made at each level. And all of those appeals were taken from the denial of the July 21st application for a visit with his first wife. And indeed, later on in the body of his complaint, he says that what he's complaining of is that the regulation makes it impossible for him to consummate his marriage and have sexual relations with his wife. He never once says that he's not challenging the specific denial of his request for an overnight visit with his wife, which is the injury that gave rise to standing for him to bring the underlying lawsuit in the first place. The second reason that the reply and the appellant's criticism of the complaint is not well taken is that as the district court noted in his well-reasoned opinion, as a pro per plaintiff below, Mr. Pouncell is entitled to liberal construction of his complaint. That was the Erickson v. Pardis case, 551 U.S. 89 at page 94. Let me ask you this. Can you distinguish your case from Henderson v. Hubbard? Or is Henderson just simply wrong? I think this case is distinguishable from Henderson v. Hubbard. In that case, it was an unpublished district court case that was It's obviously not controlling, I know that. But part of the reason you're here is because we're trying to resolve this issue. Correct. In that case, first of all, there was one wife consistently throughout the entire marriage. But the facts in that case, which it was an unopposed motion to dismiss in that case, there was, I think, in 1998 an application for an overnight visit that was made, and Henderson elected to sit on his rights in that case and not oppose that Does it matter that this is a different wife? I think it does matter. So if this was the same wife, then would counsel for appellant be right? I don't think counsel for appellant would necessarily be right on the statute of limitations issue if this were the same wife. But there are regulations in Title 15 of the California Code of Regulations that allow the prison to deny serial administrative grievances such as that. So if it were the same wife, the prison could have denied the appeal on those grounds. But here, there's a new wife, and the California Code of Regulations specifically says that if there's a change in circumstances that creates a new issue, that would allow a plaintiff to bring a new appeal. So if we believe that the complaint was a challenge to the implementation of the statute, then is appellant right? I don't believe so. I wanted to point to some additional language in Maldonado v. Harris, which was raised earlier. And in that case, the Court noted that a facial challenge to a regulation under Section 1983 and the First Amendment could possibly never be barred under the statute of limitations. But additionally, in that case, there was an ordinance that was involved that was challenged the entire time, both in the early 90s when the plaintiff in that case attempted to challenge the postings of commercial signs on his property by the 101, and then the same ordinance when he tried to bring his lawsuit years later as to different signs posted on his property. And that Court found that it was timely. The LWOP regulation hasn't changed from 2002 to 2009, right? That's correct. And I think that's the same as the Chorosky v. Henderson case that was noted earlier. The policy of relief does Mr. Poncel request in his complaint? Mr. Poncel wants to have his visitation rights restored to him, is what he claimed. Now, he didn't want a declaration that the regulation was somehow faulty? He wants a declaration that he's allowed to have conjugal visits. But he's not challenging the declaration saying that it's cruel and unusual punishment to adopt such a regulation? I think it might be a little bit of both. As a pro se plaintiff, I think that he might have asked for both. But specifically, he wants to have conjugal visits with his client. So if he's really – but I guess – I think Knox is the appellant's best case. So how do you distinguish your case from Knox? Why should we not hold that Poncel, like Knox, is simply challenging the effect of the initial policy decision? I think Knox is – I mean, it is – it's sort of a chicken and an egg thing. I think Knox is distinguishable for a couple of reasons. I think one is that the letter that Knox received denying her right to have a visitation with her prison clients was a decision specific to her that was made, and that decision was outside of the statute of limitations. Here we have a new decision that was the product of independent consideration in 2008, and that's the decision that's being challenged. There was no reference at all to anything that happened in 2002 when Mr. Poncel filed his first grievance. And, indeed, at the supplemental excerpts at record, page 7, the director's level appeal letter to Mr. Poncel explaining why his appeal was ultimately denied states, all submitted documentation in supporting arguments that the parties have been considered. And I think in that way Knox supports our position because it shows that there was independent consideration. I would also point the Court to footnote 3 in the dissent of Knox, which I think is persuasive. It says, first of all, that the appellant in that case recognized that if there had been no specific letter, each new decision denying an application for a visit would have triggered a new statute of limitation. And also ---- Kennedy So if you're saying that in 2002, that the prison authorities had said, Mr. Poncel, your request is denied to have a conjugal visit with wife one, and that means that you will never have the right again, because as long as you're here on LWOP, you're not going to have conjugal visits. If they said that, then the statute would have started running then. I don't think necessarily so, Your Honor. I think that here, because the second application and its appeal, the decision was a product of independent consideration and not made by reference to the 2002 decision, that wouldn't necessarily be the case. I think that if the ---- his application were denied and the prison said, you were told in 2002 you could never have any visit with any wife, that might be a different story. But that wasn't the case here. Here he had a multiple-level administrative appeal, and that was considered at every level on its merits at the prison, and then he timely brought his claim after that. I do think it's also interesting in the footnote 3 to the dissent in Knox v. Davis that the dissent specifically theorizes that if there were a regulation that generally applied that blocked the appellant in that case from having contact with her prison clients, that would be a different story, and everyone would agree, the dissent theorizes, that a new statute would accrue each time an individual request was denied. And here we have an individual request. Ms. Marotta, are you arguing that the subsequent Supreme Court decision in Morgan undermines the rationale of Knox, which was decided in 2001, and I think Morgan was in 2002? Correct. I don't know that it necessarily undermines it, but one of the things I was going to point out today was the language that you read earlier today, that Chorosky and Morgan both hold that each new discriminatory act starts a new clock for filing charges alleging that act. And, indeed, Knox v. Davis recognizes that if there is a new decision that's the product of independent consideration, that, too, starts a new clock for filing a new charge. It just wasn't the case there. Each decision denying her new request was reaching back to the decision earlier, I think it was the January 2000 letter, and by reference to that letter, which was outside the statute of limitations, her requests were denied. I see I'm running out of time. There don't appear to be other questions. I have one last question for you. Go ahead. Knox, Morgan, Ledbetter, Chorosky, they're all continuing violation cases. This is not. Why are we spending so much time talking about the rationale of those cases if this isn't a continuing violation? I think it's because in connection with the finding that the continuing violation doctrine didn't apply, all of those cases held that if there is, indeed, a new discrete act, that new discrete act is actionable if claims are timely filed as to those acts. So even if the continuing violation doesn't apply, which Appellant claims here, Mr. Pounceville's lawsuit is timely because he is filing a lawsuit as to a new discrete act. Thank you very much. Thank you for your argument. With my time remaining, I'd like to correct a couple of misstatements regarding the relief sought in the complaint. At Appellant's excerpts of Record 37 under relief, Mr. Pounceville seeks reinstate family visits for lifers and life without the possibility of parole so I can fulfill my duties religiously to my wife and guide my children and family with direct understanding of my faith. And on excerpts of Record page 39, under conclusion, he indicates California Department of Corrections and Rehabilitation has implemented a rule to the California Code of Regulations Title 15 that is in direct conflict with Petitioner's assured constitutional right to freedom of religion and the RLUPA Act. Thus, he seeks relief in the form of revocation of a regulation and not a visit with his wife. Second, in his complaint, he does not mention the 2008 visitation application at all that surfaced for the first time in an unauthorized surreply to the motion to dismiss. In addition, were this a denial of an application for a visit, he would not be suing CDCR, he would be suing the correctional counselor who denied it. There is no respondeat superior liability under Section 1983. Moreover, there was no waiver by processing a subsequent inmate appeal and this Court has held in Boyd that we want to promote resolution of things at the level that is appropriate to accept inmate appeals, but it doesn't waive a potential defense. I see that I'm running out of time. If there are any other questions? Well, under your theory, when the regulation at issue was passed, would every inmate who was married and who had knowledge of the regulation then have been barred? When was the regulation passed? The regulation was implemented in 1996. Yeah, and the statute of limitations back then was one year? Yes, Your Honor. Okay. However, under RELUPA, which was not adopted until 2000, there's a four-year statute of limitations. Right. But his court ---- With regard to the 1983 claim, would they have been barred after the one year? Yes, Your Honor. So everyone would have to challenge that right away, even if they ---- No. I apologize, Your Honor. It accrues when you have knowledge of the wrongful act. Mr. Poussel was advised of the regulation in 2002. So each inmate who applied for visitation was denied and was told the reason it was a violation of the regulation. That is when their cause of action would accrue. They're not charged with knowledge of the law as of 1996? No, Your Honor. I think that once they know of the specific alleged wrongful conduct, such as application of a regulation that they find unlawful, that's when the statute of limitations would accrue. All right. Thank you for your argument. Your time has expired. Thank you. This matter will stand submitted.
judges: Bennett, Callahan, Bea